UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

DANIEL C. PORTEE,

     Plaintiff,

V.

RHONDA JONES, et al.

     Defendants.

Civil Action No. 6: 17-04-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Daniel C. Portee is an inmate currently confined at the United States Penitentiary-Coleman I in Coleman, Florida.  Proceeding without an attorney, Portee filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) against prison officials at United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky.  [R. 1]  Portee's claims against Defendants Lt. Long and Acting Lieutenant Reams were previously dismissed by separate Court Orders.  [R. 41, 45]  Defendants Rhonda Jones, Christopher Davis, T. Cimarossa, Janice Keith, Elizabeth Barnes, Maria Marreo, and Stephine Sumner (collectively, "Defendants"), by counsel, have filed a motion to dismiss or, in the alternative, motion for summary judgment with respect to Portee's remaining claims. [R. 49]  Pursuant to the Court's Order entered March 29, 2019, Portee was required to file a response to Defendants' motion on or before April 15, 2019. [R. 54]  However, that time period has now expired, and no response has been filed by Portee.  Thus, this matter is ripe for review.

**I.**

The allegations of Portee's complaint are unclear, somewhat repetitive, and confusingly labeled.  However, Portee's complaint generally relates to his medical treatment, including the

management of his pain and his use of a four-wheeled walker with a seat, while he was incarcerated at USP-McCreary.

Specifically, Portee asserts the following claims: 1) Defendant Jones acted with deliberate indifference to Portee's serious medical needs in violation of Portee's rights under the Eighth Amendment by failing to provide Portee with a prescribed medical treatment, specifically a four-wheel walker with a seat that was operational and safe to use for its intended purposes [R. 1 at p. 3-9, "Factual Allegations," Count I, ¶¶ 9-50, 175-177]; 2) Defendant Jones' failure to provide Portee with the appropriate full-size four-wheel walker with a seat to accommodate his size and weight violated Portee's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 [R. 1 at p. 9-10, "Factual Allegations," Count II, ¶¶ 51-52]; 3) Defendants Jones, Cimarossa, Keith, Barnes, Davis and Marrero violated Portee's Eighth Amendment rights in multiple ways, including by failing to provide him with pain medication for injuries Portee sustained to his head, left elbow, and lower back when Portee was housed at another Bureau of Prisons ("BOP") facility, failing to provide medication for sleep and memory issues, and failing to provide treatment for his reports of rectal bleeding [R. 1 at p. 10-20, "Factual Allegations," Count III, ¶¶ 54-115]; 4) Defendants Jones, Davis, Cimarossa, Keith, and Marreo violated Portee's Eighth Amendment rights in various ways, including by misleading Portee to believe that he would be seen by a medical provider or physician to address his medical concerns, denying Portee adequate pain medication, denying Portee's sick call requests to see a physician for follow-up medical treatment, refusing to address Portee's medical concerns, denying Portee outside medical testing of an EMG, and denying Portee's use of his four-wheel walker with seat [R. 1 at p. 20-25, "Causes of Action," Count I, ¶¶ 116-147]; 5) On October 5, 2015, Defendant Sumner violated Portee's Eighth Amendment rights by issuing

Portee disciplinary charges for being in an unauthorized area [R. 1 at p. 26-30, "Causes of Action," Count II, ¶¶ 160-167; Count III, p. 32, ¶¶ 183-84]; and 6) Defendants Jones and Sumner violated Portee's rights under the ADA and RA in relation to Portee's use of a four-wheeled walker with seat [R. 1 at p. 31-32, "Causes of Action," Count II, ¶¶ 178-182].

Thus, in sum, Portee asserts various Eighth Amendment claims related to his medical care (numbers 1, 3, and 4 listed above), claims under the ADA and RA related to his use of a four-wheeled walker with seat (numbers 2 and 6 above), and claims under the Eighth Amendment related to disciplinary charges (number 5 above). As relief, Portee seeks "normal, compensatory, and punitive damages," as well as "all other just and equitable relief that this Honorable Court deems necessary." [R. 1 at p. 33]

In their motion, Defendants argue that Portee's complaint should be dismissed because it is untimely; Portee fails to state a claim for which relief may be granted for violation of the First and Eighth Amendments, as well as for violation of the ADA and/or RA; Defendants Cimarossa and Davis are entitled to statutory immunity; and all of the Defendants are entitled to qualified immunity. [R. 49-1] In the alternative, Defendants seek summary judgment. [*Id.*]

## II.

Before addressing the merits of Defendants' motion, the Court notes that, on February 6, 2019, the Court entered an order directing Portee to file a response to Defendants' motion within 45 days and specifically warned him that, if he failed to do so, the Court may dismiss his case for failure to prosecute, *see* Fed. R. Civ. P. 41(b), or grant Defendants' motion for any reason adequately supported by the record, *see Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). [R. 50]. On March 26, 2019, after a copy of the Court's Order denying Portee's "motion to stay/motion for appointment of counselor" was returned as undeliverable [R. 52, 53], the Court

entered an Order noting that, although Portee had not updated his address of record with the Court, a review of the BOP's "Inmate Locater" website showed that Portee had been transferred to USP-Coleman I. [R. 54][1] Thus, in light of these circumstances, the Court directed that the Clerk of the Court update Portee's address of record and *sua sponte* extended the time by which Portee must file his response through and including April 15, 2019. [*Id.*]

Portee's extended response deadline has now expired, and Portee has not filed any response to Defendants' motion. Portee was specifically warned that his failure to file a response may result in the dismissal of his case for failure to prosecute. Dismissal is generally warranted where the party fails to act in the face of a clear prior warning that the case would be dismissed. *Bowles v. City of Cleveland*, 129 F. App'x 239, 244 (6th Cir. 2005). Thus, Portee's failure to respond alone would justify dismissal of his Complaint. Regardless, in the interest of completeness and finality, the Court will also consider the substantive arguments set forth by Defendants in their motion to dismiss or, in the alternative, motion for summary judgment.

### III.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Portee is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

---

[1] Portee subsequently filed a Notice of Change of Address with the Clerk of the Court. [R. 55]

Here, Defendants move both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [R. 49] Thus, the Court will treat Defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

If the moving party demonstrates that there is no genuine dispute as to any material fact and that they are entitled to a judgment as a matter of law, that party is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F. 2d 125, 127 (6th Cir. 1992). The moving party does not need its own evidence to support this assertion but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point

to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Ford v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### A.     Timeliness of Portee's Eighth Amendment Claims

The Court agrees that at least some of Portee's Eighth Amendment claims alleging that various defendants were deliberately indifferent to his serious health needs are untimely. Portee signed and mailed his complaint on January 6, 2017. [R. 1] Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The events about which Portee complains occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("*Bivens* claims have a one year statute of limitations under Kentucky law.").

A claim accrues when the plaintiff becomes aware of the injury which forms the basis for his claims. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015)

("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Where, as here, the operative facts are not in dispute, the Court determines as a matter of law whether the statute of limitations has expired. *Highland Park Ass'n of Businesses & Enterprises v. Abramson*, 91 F.3d 143 (Table) (6th Cir. 1996) (citing *Hall v. Musgrave*, 517 F.2d 1163, 1164 (6th Cir.1975)). *See also Fox v. DeSoto*, 489 F.3d 227, 232 (6th Cir. 2007).

### 1. Portee's Eighth Amendment Claims Related to his Walker

With respect to Portee's Eighth Amendment claims related to his walker, Portee alleges that, prior to his arrival at USP-McCreary in December 2014, medical personnel had provided him with a four-wheel walker with a seat to assist him with walking and to provide him a seat when Portee's body felt unstable. [R. 1 at p. 3] According to Portee, on or about May 25, 2015, he showed Defendant Jones his walker and explained that it was unsafe and needed to be repaired or replaced. [*Id*. at p. 4] Portee alleges that, on or about July 8, 2015, he was issued a new walker that was much smaller and did not have a seat. [*Id*. at p. 5] Portee alleges that he complained to Jones that this walker was too small for his size and weight, but that she said that it was all she had in stock. [*Id*. at p. 5-6] He further states that, on July 14, 2015, he submitted a cop-out to Jones concerning the pain his new walker was causing him due to bolts that embedded into his thighs when he sat on the walker. [*Id*. at p. 6] He alleges that he exhausted his administrative remedies as it relates to the issues related to his walker in Administrative Remedy ID# 831281, which was denied by the Central Office on October 28, 2015. [*Id*. at p. 10]

Portee became aware that his walker was allegedly too small and did not have a seat on July 8, 2015, the date that the walker was issued. However, construing Portee's claims broadly, at the very latest, Portee's claims related to his walker accrued (and the statute of limitations began

7

to run) on July 14, 2015, the date that he alleges that he complained about his issues with the new walker to Jones. Before he could file suit, however, Portee was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 205-07 (2007). When a claimant is required to exhaust such remedies before bringing suit, the limitations period is tolled while he or she does so, as long as such remedies are pursued diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

According to documents submitted by Defendants (and not contradicted by Portee), Portee's grievance related to his walker (later assigned Administrative Remedy ID# 831281) was accepted by the warden on August 6, 2015. [R. 49-2, Declaration of Robin Eads, ¶ 4, Att. B, SENTRY Report, Administrative Remedy Generalized Retrieval at p. 39, Page ID# 1538]. Although the limitations period began to run on July 14, 2015, it was tolled from August 6, 2015, through October 28, 2015, the date on which Portee's administrative remedy appeal was denied by the BOP's Office of General Counsel. [*Id.*, Att. B at p. 44, Page ID#1543] Thus, the statute of limitations expired on October 4, 2016, or 342 days after the tolling period ended. Because Portee did not file suit until January 6, 2017, his claims related to his walker are time-barred and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

## 2. Portee's Eighth Amendment Claims Related to Denial of Medication/Availability of Medical Appointments

Defendants argue that Portee's claims related to the denial of pain medication, as well as his allegations that he was misled about his medical appointment schedule, are also untimely. [R. 49-1] Specifically, Defendants refer to Portee's allegations that Defendants Jones, Davis, and Cimarossa violated his Eighth Amendment rights by intentionally misleading Portee to believe that he would be seen by his provider or a physician to address all of this medical concerns and

intentionally delaying his medical care from December 24, 2014, through September 29, 2015. [R. 1 at ¶ 117-118, 121]  Portee also alleges that Defendants Jones and Cimarossa violated his Eighth Amendment rights by denying his sick call requests to the physician for follow-up medical treatment related to a lower back injury he suffered on June 27, 2014, from December 23, 2014, through November 28, 2015.  [*Id.* at ¶ 121]

Defendants argue that Portee's medical care claims against Jones, Davis, and Cimarossa accrued on April 29, 2015, the date that Jones replied to an April 28, 2015, electronic communication sent by Portee to Davis requesting pain medication, advising Portee to watch for an appointment with his provider.  [R. 49-1, citing R. 1 at ¶¶ 72-73].  The Court agrees that Portee's claim related to the alleged denial of his pain medication accrued (and the statute of limitations began to run) at this time, after which he was undoubtedly aware that he had not received the pain medication that he requested.  *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *24 (E.D. Ky. June 9, 2006), *aff'd and remanded sub nom. Cuco v. Fed. Med. Ctr., Lexington*, 257 F. App'x 897 (6th Cir. 2007).

Portee filed the first of his administrative remedy requests related to the April 28-29 communications on August 6, 2015 [R. 1 at ¶ 83, referencing Remedy Request ID# 831285], thus tolling the statute of limitations.  Prior to tolling, the limitations period had run for approximately 99 days.  Although Portee's complaint alleges that he could not properly exhaust his administrative remedy related to this claim because he did not receive a timely response to his regional level appeal [R. 1 at ¶¶ 115, 124], Defendants have submitted evidence (to which Portee did not respond) that Portee actually did receive a response on October 13, 2015.  [R. 49-2, Eads Dec. Att. B at p. 42]  Thus, the tolling period ended on October 13, 2015, the day of the final response to Portee's

administrative remedy request. At that time, there were 266 days remaining of the limitations period, which then expired on July 5, 2015. Portee's complaint was mailed on January 6, 2017 [R. 1], 184 days after the expiration of the statute of limitations. Accordingly, his claims related to the alleged denial of his pain medication and the availability of medical appointments against Jones, Davis, and Cimarossa are also untimely.

**B.    Portee's Complaint Fails to State a Claim for Violations of the Eighth Amendment**

To be sure, Portee's complaint is by no means a model of clarity and raises a variety of Eighth Amendment claims against multiple defendants based on conduct that he claims occurred repeatedly over a long period of time. Portee also has a long history of filing administrative remedy requests (according to Defendants, he has submitted over 144 administrative remedy requests or appeals [R. 49-2 at ¶ 4]), which, based on Portee's own allegations, appear to repeatedly re-raise complaints raised in prior remedy requests against some of the same individuals. In addition, copies of Portee's administrative remedy requests are not before the Court, thus it is difficult to pin down when some of the claims raised by Portee's complaint accrued and/or when the limitations periods related to those claims may have been tolled. Even so, all of Portee's Eighth Amendment claims related to his allegations of denied or inadequate medical care must be dismissed because he fails to state a viable Eighth Amendment claim for which relief may be granted.

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones*

*v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

Even assuming that Portee has satisfied the objective component with respect to his Eighth Amendment claims, the subjective component requires a showing that (with respect to each Defendant against whom these claims were asserted) each Defendant was aware of Portee's medical conditions yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Portee's health, a much more demanding standard. *Farmer*, 511 U.S. at 834; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Indeed, "the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

In addition, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Thus, when a prisoner has been examined and treatment provided but the prisoner merely disagrees with the course of care

determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

Defendants have submitted evidence of the extensive medical treatment Portee received while he was incarcerated at USP-McCreary, including for the chronic health issues to which he refers in his complaint, such as hypertension, lower back pain, chronic bronchitis, sleep apnea, memory loss, and reports of blood in his stool. [R. 49-3, Declaration of Rhonda Jones, Attachment A, Medical Records] Portee's reports of pain were also evaluated and the clinical director determined that the continued use of a prescription narcotic for pain management was not indicated. [*Id*. at p. 2, ¶ 3] Portee was prescribed various medications for chronic bronchitis and hypertension, as well as albuterol, hydrochlorothiazide, and a step-down prescription for gabapentin. [*Id*.] Davis requested a gastroenterology consult for a potential colonoscopy and a radiology consult for a potential MRI scan, although a review of Portee's medical record led him to determine that additional treatment was not needed for Portee's reports of low back pain, as his prior MRI and EMG were normal. [*Id*. at p. 2, ¶ 4] In May 2015, after Portee reported to the Health Services Department complaining that he fell while walking with his roller walker, a physical exam was conducted and Portee was transported to the local hospital for further evaluation; however, a CT scan of the spine was negative for any new damage. [*Id*. at p. 3, ¶¶ 6-7] From June through January of 2016, Portee continued to be evaluated and treated for various

health conditions, including reports of rectal bleeding, lower back pain, high blood pressure, headaches, dizziness, and shortness of breath (although Portee was not always cooperative with the examinations or the application of restrains to be escorted to appointments). [*Id.* at p. 3-8, ¶¶ 8-19]

Because Portee did not file a substantive response to Defendants' motion, the Court accepts Defendants' factual assertions regarding the extent of Portee's medical care as true. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-05 (6th Cir. 1992). Thus, it is clear that, rather than deliberate indifference to Portee's serious medical needs, Portee was actually provided with extensive medical care for the health conditions referenced in his complaint. Although Portee may have disagreed with the medical care provided to him while he was at USP-McCreary, a prisoner's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts."). Because Portee's disagreement with Defendants regarding the best course of medical treatment for his chronic health issues is insufficient to state a claim of deliberate indifference under the Eighth Amendment, Defendants are entitled to summary judgment on Portee's Eighth Amendment claims.

### C. Portee Claims Under the ADA and the RA must be Dismissed

Portee's complaint seeks to assert claims against Jones and Sumner under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). [R. 1 at ¶¶ 52-53, 170-182]

Title II of the ADA prohibits any public entity from discriminating on the basis of an individual's disability in the provision of services, programs, or activities:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added). The Rehabilitation Act's anti-discrimination provision is to like effect. 29 U.S.C. § 794(a).

However, only a "public entity" may be sued under the ADA and the RA. The term "public entity" includes "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). But Jones and Sumner may not be sued under the ADA or RA because "there is no individual liability under Title II of the ADA." *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010). *See Williams v. McLemore*, 247 F. App'x 1, 5-6 (6th Cir. 2007) (holding that public employees may not be sued in their individual capacity under Title II of the ADA); *Hiler v. Brown*, 177 F. 3d 542, 545-46 (6th Cir. 1999) (holding that there is no personal liability for individuals under the RA). As Portee's complaint is clear that both Jones and Sumner are sued in their individual capacities [R. 1 at ¶ 6, 13], his claims against them under the ADA and the RA must be dismissed.

> **D.    Portee's Claim Against Sumner Related to the October 2015 Disciplinary Report must be Dismissed**

In his complaint, Portee alleges that he and Sumner had a dispute on October 5, 2015, after Portee sat in the medical lobby while waiting for the pill line, which led to Portee placing a knee on the seat of his four-wheeled walker to demonstrate that it was unsafe, which then caused the

walker to collapse.  [R. 1 at ¶ 159-163][2]  Portee alleges that, later that evening, he was called to the Lieutenant's Office and given a disciplinary report written against him by Sumner alleging that Portee had committed Prohibited Act Code 281-Destroying, Altering, or Damaging Property in excess of $100.00 and Prohibited Act Code 316-Being in an unauthorized area.  [*Id.* at ¶¶ 165] Portee alleges that, on October 20, 2015, he filed a BP-8 (later assigned Remedy #841812) alleging that Sumner falsified a government document in relation to the disciplinary report in order to "cover her conduct." [*Id.* at ¶ 167][3]  Based on these allegations, Portee asserts a claim that he was "subjected to false disciplinary charges in violation of the Eighth Amendment," as Sumner fabricated the incident report and "that video surveillance showed Defendant Sumner clearly lied with no rational why." [*Id.* at ¶¶ 183-184]

Portee's complaint is clear that he seeks to bring this claim against Sumner as an Eighth Amendment violation.  [*Id.*]  However, Portee fails to explain how Sumner's act of issuing an incident report alleging that Portee destroyed property (which he concedes that he destroyed in the course of demonstrating the inadequacy of his walker [R. 1 at ¶ 162]) amounts to cruel and unusual punishment in violation of the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," but the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and...'reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832.  To

_____

[2] His allegations also refer to a dispute with Jones regarding Portee's use of his four-wheeled walker in September 2015 [R. 1 at ¶ 151-158], but Portee does not appear to allege any other claims against Jones related to this dispute.

[3] Portee also alleges a retaliation claim against Reams, based on his allegations that Reams failed to preserve exculpatory video footage that had been requested by Portee prior to his related disciplinary hearings on November 11 and 24, 2015, and that Reams also falsified government documents.  [R. 1 at ¶ 168-173, 185-186]  However, his claims against Reams were previously dismissed by the Court.  [R. 41]

establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 294 (1991) (an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987). To state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

Portee's allegations simply do not establish that, in issuing the incident report related to the collapsed walker, Sumner was actually aware of a substantial risk that Portee would suffer any harm, much less serious harm, and that she knowingly disregarded that risk. Nor does Portee allege any facts suggesting that he has experienced any physical symptoms related to the disciplinary proceedings resulting from the incident report, as required by 42 U.S.C. § 1997e(e).[4] Rather, he alleges only that Sumner's actions placed him at risk of being placed in the Special

---

[4] 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg,* No. 2:06–CV–235, 2007 WL 80875, at *3 (W.D. Mich. Jan.8, 2007) (collecting cases). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010).

Housing Unit ("SHU"), losing earned good time credit and losing unspecified privileges. [R. 1 at ¶ 167] Moreover, according to Portee, the charges against him resulting from the incident report were later expunged. [*Id*. at ¶ 171] Thus, Portee's Eighth Amendment claim against Sumner related to the incident report fails.

Although Portee's allegations make clear that he seeks to bring this claim against Sumner under the Eighth Amendment, to the extent that he suggests that Sumner issued the incident report in retaliation for a grievance filed by Portee against Sumner [*Id*. at ¶ 173], he alleges no facts that lend any support to this claim whatsoever. To succeed on a First Amendment retaliation claim, the plaintiff must demonstrate that:

> (1) the plaintiff engaged in protected conduct;
>
> (2) the defendant took action against the plaintiff sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct.

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Portee does not allege any facts to support the notion that the incident report was motivated by animus occasioned by his grievance against Sumner. In fact, according to Portee's own allegations, although Sumner wrote the incident report related to Portee's destruction of his walker on October 5, 2015, [R. 1 at ¶ 165], Portee did not file his grievance against Sumner accusing her of falsifying a government document until October 20, 2015. [*Id*. at ¶ 167] Sumner could not possibly have written the incident report in retaliation for a grievance that had not yet been filed. Regardless, mere correlation does not unequivocally imply causation: courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect evidence of the defendant's motive to retaliate, *Muhammad v. Close*, 379 F.3d

413, 417-18 (6th Cir. 2004), it is usually coupled by other indicators of intent, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here.

Portee certainly cannot satisfy the minimum pleading requirements of Fed. R. Civ. P. 8 by merely attaching the word "retaliation" to actions by prison officials with which he disagrees. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This remains true even with the additional latitude afforded to *pro se* litigants. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations."). Indeed, "[l]egal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir.2010) (other citations omitted)). Thus, the lack of factual detail supporting Portee's claims and vague nature of his allegations are sufficient reasons to dismiss his claims for failure to adequately state a claim for relief. *See Iqbal*, 556 U.S. at 678; *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008).

Defendants have also set forth a compelling argument that the Court should not imply a remedy for retaliation under either the First or Eighth Amendments in light of the United States Supreme Court's decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). It is true that the United States Supreme Court has repeatedly indicated that a First Amendment claim for damages is not cognizable under *Bivens*. *See Reichle v. Howards*, 566 US 658, 665 n.4 (2012) ("We have never

held that *Bivens* extends to First Amendment claims."). Moreover, in *Ziglar*, the Supreme Court re-emphasized that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S.Ct. at 1857. However, because the Court finds that Portee has failed to state a claim for violations of the First and/or Eighth Amendments, it need not address Defendants argument that "special factors" counsel against implying a *Bivens* remedy in this case.

## E. Defendants Davis and Cimarossa are Entitled to Statutory Immunity

Davis and Cimarossa have both submitted evidence that they are both commissioned officers of the United States Public Health Service ("PHS"). [R. 49-4, 49-5] Both Davis and Cimarossa argue that, as PHS officers, they are entitled to immunity from Portee's constitutional *Bivens* claims. [R. 49-1 at p. 18-19] The Court agrees.

Under 42 U.S.C. § 233(a), Congress has specifically provided that an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA") is the only remedy available for claims against a PHS officer arising from the performance of his or her duties:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). Construing this provision, the United States Supreme Court has specifically held that "PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of [their] conduct" in the course of their employment. *Hui v. Casteneda*, 559 U.S. 799, 802 (2010). Following *Hui*, federal courts have consistently dismissed *Bivens* claims against PHS

officers in light of the exclusivity of the remedy provided by the FTCA. *Cf. Barrett v. Marbury*, 402 F. App'x 143, 145 (7th Cir. 2010) (dismissing prisoner's *Bivens* claim against PHS officer arising out of dental care provided at prison); *Etkins v. Glenn*, 519 F. App'x 111, 112 n.2 (3d Cir. 2013) (affirming district court's denial of plaintiff's motion to amend complaint to assert *Bivens* claims against PHS officer); *Norris v. Growse*, No. 09-CV-339-KSF, 2011 WL 4424746, at *4-6 (E.D. Ky. Sept. 21, 2011). Because the FTCA is the sole remedy for damage allegedly suffered as a result of actions taken by Davis and/or Cimarossa as PHS officers, Portee's claims against them under *Bivens* must be dismissed.

### F. Defendants are Entitled to Qualified Immunity

Finally, Defendants argue that, as no constitutional violation has occurred, they are each entitled to qualified immunity from suit. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When evaluating official immunity claims, the Sixth Circuit applies the following three-part test: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(citation omitted).

The Court has concluded above that no First or Eighth Amendment violations occurred. Thus, each of the Defendants are entitled to and shielded by qualified immunity.

**IV.**

For all of these reasons, the Defendants' motion to dismiss, or in the alternative, motion for summary judgment will be granted and Portee's complaint will be dismissed.

Accordingly, **IT IS ORDERED** that:

1. Defendants' motion to dismiss, or in the alternative, motion for summary judgment [R. 49] is **GRANTED**.

2. Portee's complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

3. All pending motions or requests for relief in this case are **DENIED AS MOOT**.

4. This action is **STRICKEN** from the Court's active docket.

5. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Dated June 5, 2019

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY